**BEAN et al. v. BEAN.**

No. 4587.

Court of Civil Appeals of Texas. Texarkana.

Jan. 28, 1935.

Rehearing Denied Feb. 14, 1935.

Storey, Sanders & Sherrill, of Dallas, T. J. Arnold, W. W. Moore, Jr., P. F. Graves, and Williams, Lee, Sears & Kennerly, all of Houston, Phillips, Trammell, Chizum, Estes & Edwards and Slay & Simon, all of Fort Worth, Edwin Lacy, of Longview, Smith & West and J. W. McDavid, all of Henderson, and Wm. Hodges, of Texarkana, for appellants.

Wynne & Wynne, of Longview, for appellee.

SELLERS, Justice.

It appears from this record that Carlos Bean in 1927, being then in the United States Navy, and stationed at Washington, D. C., executed and delivered to his brother, Nat B. Bean, the following power of attorney:

"State of Texas, County of Rusk

"Know all men by these presents:

"That I, Carlos Bean, a Captain in the United States Navy, now located at Washington City, District of Columbia, have made, constituted and appointed and by these presents

do make, constitute and appoint N. B. Bean of the County Rusk, State of Texas, my true, sufficient and lawful attorney for me, and in my name, place and stead, to enter upon the following tracts of land, situated in Gregg and Rusk Counties, Texas, described as follows: to-wit: (Here follows description of six tracts of land.)

"The same being my undivided interest in and to the six foregoing described tracts of land, by virtue of heirship by and through the estates of C. S. Bean, William Wirt Bean and John E. Bean, all deceased.

"And to demand possession of the same, and if necessary to institute such suit or suits, as to my said attorney shall seem proper, for the recovery of the possession of said lands, and to employ counsel to prosecute or assist in prosecuting same, and also my attorney in fact, for me and in name, to bargain, grant, sell and convey to any persons or person, and for any sum of money, or other considerations as to him may seem most to my advantage, said above described tracts of land; to receive the consideration for which said lands may be sold and for the same, execute in my name proper receipts and acquittances and to make and execute to the purchaser or purchasers thereof, such deed or deeds or assurance of title to said tracts of land with such covenants and warranties as to my said attorney may seem proper, giving and granting unto my said attorney full power and authority to do and perform all and every act whatsoever, requisite and necessary to be done, in and about the premises, as fully, to all intents and purposes, as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done in the premises by virtue hereof.

"Witness my hand this 21st day of December, A. D. 1927.

"Carlos Bean.

"District of Columbia, City of Washington

"Before me, the undersigned authority, in and for said District of Columbia, on this day personally appeared Carlos Bean, known to me to be the person whose name is subscribed to the foregoing and attached Power of Attorney, and acknowledged to me that he executed the same for the purposes therein expressed.

"Given under my hand and seal of office, this 21st day of December, A. D. 1927. Susan E. Dorsey, Notary Public in and for City of Washington, District of Columbia."

Indorsement:
"Power of Attorney
 "From Carlos Bean to N. B. Bean
 "Filed Oct. 22, 1930.
 "Recorded Vol. 155 page 374.
 "W. T. Arnold, County Clk,
     "By J. M. Jones, Deputy (CMG)."

A few days after the above power of attorney was delivered to Nat Bean, a suit for partition of the lands described in the power of attorney was filed in the district court of Rusk county by owners of certain interest in the land, and Nat Bean and Carlos Bean were made defendants in that suit. A final judgment of partition was entered in the partition suit on the 9th day of January, 1929, and the decree as entered set apart to Nat Bean and Carlos Bean jointly what is known as a 59-acre tract of land, a part of the Isaac Ruddle and Jacob Lewis surveys in Rusk county. And it is the title to the mineral estate in this tract of land that is involved in this appeal. The 59-acre tract, according to a recent survey, was found to actually contain 64.54 acres.

On October 16, 1930, Nat Bean for himself individually, and as attorney in fact under the above power of attorney for Carlos Bean, executed to Frank Elder an oil and gas lease for a period of ten years, and for a consideration of $3 per acre cash. The lease contained the many usual provisions found in such instruments. On January 31, 1931, a correction lease was executed to Frank Elder by Nat Bean, and which he also signed as attorney in fact for Mary Bean, the wife of Carlos Bean, from whom he had no power of attorney. This lease was assigned to various individuals, all of whom are parties to this suit. Nat Bean also executed a mineral deed to J. W. Barton for a one-fourth interest in the minerals in the tract of land, signing the same individually and as attorney in fact for Carlos Bean. Those claiming an interest to the minerals by virtue of this deed are also parties to this suit.

This suit is by Carlos Bean in trespass to try title against Nat Bean and the other parties who claim the interest of Carlos Bean in the minerals of the land involved by virtue of the conveyances of Nat Bean as attorney in fact for Carlos Bean. In his petition Carlos Bean also seeks an accounting from the defendants for the oil taken from the land. The several defendants answered by general demurrer, general denial, pleas of not guilty, and some of them claim to be innocent purchasers for value, and certain others who have developed the property for oil set up im-

654

provements in good faith and seek to recover the value of same in the event the plaintiff should be successful in recovering the title to the respective interests claimed by them. The case was tried before the court without a jury and resulted in judgment for the plaintiff, Carlos Bean, for a 42½ per cent. interest in the land involved and adjusted the equities between the parties with reference to the improvements placed upon the land. From this judgment the defendants have prosecuted an appeal to this court.

The appeal presents for determination the controlling and all-important proposition of law as to whether or not the power of attorney executed by Carlos Bean to Nat Bean had the legal effect of authorizing Nat Bean to sell and convey the mineral estate which the appellants claim.

In determining this question we have reviewed many authorities with respect to the rules which should govern courts in construing the legal effect of a power of attorney where such powers are required, as here, to be in writing, a few of which we will briefly refer to.

To begin with, there is a general rule universally applied by the courts of various jurisdictions that all powers conferred upon an agent by a formal instrument are to receive a strict interpretation, and the authority is never extended by intendment or construction beyond that which is given in terms or is necessary for carrying the authority into effect, and that authority must be strictly pursued. Frost v. Erath Cattle Co., 81 Tex. 505, 17 S. W. 52, 26 Am. St. Rep. 831; Skaggs v. Murchison, 63 Tex. 348, 353; Gouldy v. Metcalf, 75 Tex. 455, 12 S. W. 830, 16 Am. St. Rep. 912; Reese v. Medlock, 27 Tex. 120, 84 Am. Dec. 611; McAlpin v. Cassidy, 17 Tex. 449; Meador v. Wagner (Tex. Civ. App.) 70 S.W.(2d) 794; and authorities therein cited.

The purpose for which an authority is given is to be ascertained from the words or language used by the parties in the instrument conferring the authority. Reese v. Medlock, supra. And under no circumstances can the principal be bound beyond the plain import of the language of the instrument. Henry v. Lane (C. C. A.) 128 F. 243; Skaggs v. Murchison, supra. The words used in the instrument construed will be given their commonly understood, everyday meaning. Wynne v. Parke, 89 Tex. 413, 34 S. W. 907.

With the foregoing rules of construction as our guide, we have reached the conclusion that the power of attorney under consideration, as a matter of law, did not authorize Nat Bean to sell and convey by lease or deed the minerals under the land. The language of the instrument construed most favorably to the appellants grants only a naked power of sale of land, and such power does not include the right to lease it. 2 C. J. § 290, p. 646. The very question here involved as to whether the power to sell land authorized the agent to execute a mineral lease on the same was before the Louisiana Supreme Court in the recent case of Bolton v. Rouss, 144 La. 134, 80 So. 226, and it was there held that the agent had no such power. The Supreme Court of Louisiana is the only court, so far as our investigation discloses, that has had the precise question before it; but the point, to our mind, is in all respects analogous to the situation of one who, having the power to sell the land, conveys instead only the timber on the land; and it has been held that such a power confers no authority for the sale of the timber. St. Louis S. W. R. Co. v. Bramlette (Tex. Civ. App.) 35 S. W. 25; 2 C. J., § 249, p. 613; 1 Clark & Sayles Law of Agency, § 235, subsec. h, p. 552.

It is insisted by appellants that an oil and gas lease or deed to the minerals in land in Texas is a conveyance of a distinct portion of the realty, and for that reason a power to sell and convey the fee-simple title to the land should include the power to sell and convey the minerals separate and apart from the land itself. It is true that our courts have held the legal effect of a conveyance of the minerals is to convey a distinct portion of the land; but this construction, in our opinion, is of no importance in ascertaining the intention of the parties to the instrument to be construed. We are concerned only with the gathering of the intention of the parties from the language used as understood in common, everyday parlance; and surely to the average owner of real estate a right to sell the land does not carry with it the right to sell the minerals separate and apart from the land itself.

We have reviewed the authorities cited by appellants and relied upon as supporting their contention that the power of attorney did authorize the sale and lease of the minerals separately from the land as a whole, but we do not believe they are applicable to the situation presented by the power of attorney under consideration.

Finding no error in the record, the judgment of the trial court will be in all things affirmed.