Peter T. WINKELS, Appellant,

v.

GEORGE A. HORMEL & COMPANY, a Delaware corporation, United Food & Commercial Workers, International Union, AFL–CIO, Joseph Hanson, individually and in his official capacity as Regional Director, United Food & Commercial Workers, International Union, Region No. 13 and Trustee of P–9 AFL–CIO, Local 9, United Food & Commercial Workers, AFL–CIO, Appellees.

GEORGE A. HORMEL & CO.,

v.

UNITED FOOD & COMMERCIAL WORKERS, INTERNATIONAL UNION, AFL–CIO, Joseph Hanson, individually and in his official capacity as Regional Director, United Food & Commercial Workers, International Union, Regional No. 13 and Trustee of P–9 AFL–CIO, Local 9, United Food & Commercial Workers, AFL–CIO.

No. 88–5197.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1988.

Decided May 11, 1989.

Paul Alan Levy, Washington, D.C., for appellant.

William Isaacson, Washington, D.C., David F. Loeffler, Milwaukee, Wis., for appellees.

Before HEANEY,* FAGG and BOWMAN, Circuit Judges.

HEANEY, Senior Circuit Judge.

Peter T. Winkels appeals from a district court order granting summary judgment in favor of Geo. Hormel & Company (Hormel), United Food & Commercial Workers International (UFCW), Local 9 of UFCW, and Joseph Hanson. We reverse.

BACKGROUND

Winkels worked at Hormel's Austin, Minnesota, plant and belonged to Local 9, formerly known as Local P–9, of the

* The HONORABLE GERALD W. HEANEY assumed senior status on December 31, 1988.

UFCW. In 1985, Winkels took a leave of absence from his job to serve as business agent for Local P–9, as allowed in Article 10.6 of the collective bargaining agreement in force at that time. Local P–9 decided to strike Hormel in August 1985, and continued the strike into 1986, against the wishes of UFCW. In May 1986, UFCW placed Local P–9 in a trusteeship and appointed Joseph Hanson as trustee. The union terminated Winkels as business agent in June 1986. When Winkels sought to be reinstated by Hormel, he learned that his position had been filled by a permanent replacement.

In October of 1986, Winkels filed a grievance with the union, alleging that Hormel's failure to reinstate him violated the collective bargaining agreement. Sometime during the next four months, the union decided neither to process Winkels' grievance nor to proceed to arbitration. Although the parties disagree as to the exact date, all agree that Winkels had knowledge of the union's decision not to process his complaint by January 22, 1987.

On July 21, 1987, Winkels started what is popularly known as a hybrid § 301/fair representation suit in state court against Hormel, UFCW, Joseph Hanson and Local 9. The essence of Winkels' complaint is that Hormel breached its contractual obligation to reinstate him after his union leave in violation of section 301 of the Labor Management Relations Act, 29 U.S. C. § 185, and that the union, by failing to process his grievance, violated the duty of fair representation implied by the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* Hormel, UFCW and Local 9 were served with a summons and a complaint on July 21, 1987. The following day, Winkels delivered a summons and complaint to the Hennepin County sheriff for service on Hanson. The documents were delivered on July 27, 1987. Winkels never filed a complaint with the state court.

■ Hormel and UFCW then removed Winkels' hybrid action to federal district court. In their motion for summary judgment, they argued that Winkels' suit was time-barred as he had failed to commence his suit by *filing* within six months of the date on which his action accrued as required by *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) and *West v. Conrail*, 481 U.S. 35, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987). Although the district court apparently agreed with the defendants' interpretation of *West v. Conrail*, we do not. First, we find no language in *Conrail* suggesting that Fed. R.Civ.P. 3 has become a substantive rule of federal labor law, applicable to hybrid actions brought in state court. Second, in the absence of a clear statement to the contrary, we will follow the general rule that state procedural rules govern cases originating in state court until removed to federal court. Finally, we disagree with the defendants that the application of the state procedural rule to hybrid actions brought in state court undermines the "uniformity" sought by the Supreme Court in *DelCostello.*

## DISCUSSION

In *DelCostello*, the Supreme Court held that, because no express statute of limitations existed for hybrid actions, it would borrow the six-month limitations period provided for in section 10(b) of the NLRA.[1] 462 U.S. at 158–71, 103 S.Ct. at 2287–94. In order to meet this statute of limitations, Winkels was required to commence his hybrid action within six months of the alleged breach—in this case, no later than July 22, 1987. At dispute here is whether the state or federal rule of procedure governing the commencement of a suit applies to a hyrid § 301/fair representation claim initiated in state court and subsequently removed to federal court.

Winkels asserts that the state rule governing the commencement of an action, in

---

**1.** Section 10(b) provides in pertinent part:
[N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the persons against whom such charge is made * * *.
29 U.S.C. § 160(b) (1973).

this case Minn.R.Civ.Pro. 3.01,[2] should apply to hybrid actions originating in state court. The defendants argue that the Supreme Court in *West v. Conrail* established that the federal rule, Fed.R.Civ.P. 3,[3] determines whether a hybrid suit was "commenced" within the requisite six-month period regardless of whether the case originates in federal or state court.

First, we do not find *West v. Conrail* applicable to cases initiated in state court. In that case, an employee brought a hybrid action in federal district court by filing his complaint, but not serving the defendants, within the six-month limitations period. The Court of Appeals read § 10(b) of the NLRA to require both filing and service of the complaint within the six-month period. The Supreme Court reversed, stating:

> The only gap in federal law that we intended to fill in DelCostello was the appropriate limitations period. We did not intend to replace any part of the Federal Rules of Civil Procedure with any part of § 10(b) of the National Labor Relations Act. * * * Although we have not expressly so held before, we now hold that when the underlying cause of action is based on federal law and the absence of an express federal statute of limitations makes it necessary to borrow a limitations period from another statute, the action is not barred if it has been

"commenced" in compliance with Rule 3 within the borrowed period.

481 U.S. at 38, 107 S.Ct. at 1541, 95 L.Ed.2d at 37 (footnote and citation omitted).

The defendants urge us to find that, in this passage, the Supreme Court created a substantive rule of federal labor law governing all hybrid actions, regardless of where these actions are brought. We do not believe, however, that the Supreme Court intended federal pleading rules to become substantive federal law in these cases.[4] In *DelCostello*, the Supreme Court merely established that a hybrid action must commence within six months of accrual. It did not address how the action is to be commenced or prosecuted, or how the statute of limitations may be tolled. *West* involved a hybrid action initiated and maintained exclusively in federal court. The Court's comments about applying federal procedural rules, including Fed.R.Civ.P. 4(j) governing service of process, simply cannot be read to require the imposition of federal procedural rules when the hybrid action is initiated in state court.[5]

Furthermore, the Supreme Court's reasoning in *West v. Conrail* would lead us to the opposite conclusion. When borrowing a statute of limitations, the Supreme Court stated that it will take "only what is necessary to fill the gap left by Congress." *West*, 481 U.S. at 40 n. 6, 107 S.Ct. at 1542 n. 6, 95 L.Ed.2d at 38 n. 6. In the present

---

**2.** Rule 3.01 provides in pertinent part:

A civil action is commenced against each defendant:

(a) when the summons is served upon that defendant; or

\* \* \* \* \* \*

(c) when the summons is delivered to the sheriff in the county where the defendant resides for service * * *.

**3.** Rule 3 of the Federal Rules of Civil Procedure provides: "A civil action is commenced by filing a complaint with the court."

**4.** In fact, we are cautioned not to view Fed.R. Civ.P. 3 as federal substantive law in cases such as the one before us:

Under some circumstances, lawsuits asserting federal rights may be brought in state court. In such cases, the state may apply its own commencement provision, regardless of whether the applicable statute of limitations derives from federal or state law. Since Rule

3's provision that filing effects commencement is simply a procedural rule of the federal courts, it should not be viewed as part of the substantive federal cause of action to be applied by the state court. * * * This is, in essence, the obverse of the rule that federal courts need not apply state commencement provisions in diversity cases if those provisions are not an integral part of the state's substantive law.

2 Moore's Federal Practice ¶ 3.09[2] at 3–84 n. 15 (2d ed. 1987) (citations omitted).

**5.** We, therefore, disagree with the Fourth Circuit's holding in *Cannon v. Kroger Co.*, 832 F.2d 303 (4th Cir.1987) (commencement of a hybrid claim is assessed in accordance with the Federal Rules of Civil Procedure, regardless of fact that suit was initiated in state court). Rather, we find ourselves in agreement with the well-reasoned opinion of Judge Murnaghan in *Cannon v. Kroger Co.*, 837 F.2d 660 (4th Cir.1988) (dissenting from denial of rehearing *en banc*).

case, the defendants urge us to ignore existing state procedural rules and "borrow" the federal procedural rule governing commencement of actions in all hybrid actions. Yet, the Supreme Court, in narrowing the holding of *DelCostello*, expressly stated that there was no need to create a new substantive rule on the tolling of the statute of limitations when, because of the availability of the forum's procedural rules, "there [was] no lacuna as to whether the action was brought within the borrowed limitations period." 481 U.S. at 39–40, 107 S.Ct. at 1542, 95 L.Ed.2d at 38. *See Cannon v. Kroger Co.*, 837 F.2d at 665 (Murnaghan, J., dissenting) ("The procedural *rule* as to what it takes to commence an action is separate and distinct from what is the time period which shall govern for limitations purposes * * *.") Thus, *West v. Conrail* neither dictates nor supports the result urged on us by the defendants. *But see Cange v. Stotler and Co., Inc.*, 826 F.2d 581, 599 (7th Cir.1987) (Easterbrook, J., concurring) (interpreting *West v. Conrail* to hold that Federal Rules of Civil Procedure prevail over inconsistent state law dealing with commencement of hybrid actions).

■ Second, the defendants' argument requires us to ignore the well-established rule that a federal court must honor state court rules governing commencement of civil actions when an action is first brought in state court and then removed to federal court, even though the cause of action arises from federal law. *Herb v. Pitcairn*, 324 U.S. 117, 120, 65 S.Ct. 459, 460–61, 89 L.Ed. 789 (1945) (whether case is pending in state court for the purpose of tolling a federal statute of limitations is determined by state law); *Dravo Corp. v. White Consol. Industries*, 602 F.Supp. 1136, 1139 (W.D.Pa.1985) (in case originating in state court and removed to federal court, state procedural rules on commencement apply to toll statute of limitations). Federal Rule of Civil Procedure 81(c) provides that the federal rules govern procedure *after* removal from state court. Since federal rules govern proceedings only after removal, Rule 3 is irrelevant to whether action was properly commenced in state court pri-

or to removal. *Riehl v. National Mut. Ins. Co.*, 374 F.2d 739, 742 (7th Cir.1967); *cf., Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir.1988) (in § 301/fair representation actions filed in state court and removed to federal court, Fed.R.Civ.P. 11 applies only when federal jurisdiction is invoked over proceedings; state rule 11 governs until case is removed).

In this case, Winkels satisfied Minnesota's procedural rules governing the commencement of actions by serving the defendants with a state court summons. As filing a complaint in state court is not required to commence an action in Minnesota state court, the failure to do so cannot serve as a basis for dismissing Winkels' suit. *See Clark v. Wells*, 203 U.S. 164, 171–72, 27 S.Ct. 43, 45, 51 L.Ed. 138 (1906) (defendant cannot defeat jurisdiction by removing to federal court and claiming that service of process failed to satisfy federal rules).

The defendants assert that the use of state procedural rules will destroy uniformity in this area of federal labor law because there are a myriad of state methods for commencing actions. In this Circuit, however, only two methods of commencement exist. Three states require service of a summons to commence an action. *See* Minnesota R.Civ.P. 3.01; North Dakota R.Civ.P. 3; South Dakota Codified Laws Ann. §§ 15–6–3, 15–2–30, 15–2–31 (1984). Four states follow the federal rules, requiring filing to commence a civil action. *See* Ark.R.Civ.P. 3; Iowa R.Civ.P. 48; Mo.R. Civ.P. 53.01; Neb.Rev.Stat. § 25–501 (1985).

Furthermore, the differences in some state procedures do not undermine the six-month limitations period established in *DelCostello* and do not disturb the kind of uniformity sought by the Court in that case. In *DelCostello*, the Supreme Court repeatedly referred to the action of suing, i.e. commencing an action, and *not* to the action of filing a complaint, as the measure for ending the limitations period. 462 U.S. at 155, 157, 162, 165, 167, 172, 103 S.Ct. at 2285, 2286, 2289, 2291, 2292, 2294. It is clear that in expressing a need for uniform-

ity with regard to a statute of limitations in hybrid cases, the Supreme Court did not necessarily imply a need to achieve completely identical procedures for the handling of hybrid cases in state and federal courts.

Moreover, the purpose of the six-month statute of limitations is to extinguish state claims and to provide a guarantee to the defendant that he or she will not be subject to suit for conduct that occurred more than six months before the complaining party initiates "appropriate legal process." *West v. Conrail*, 481 U.S. at 40 n. 7, 107 S.Ct. at 1542 n. 7, 95 L.Ed.2d at 38 n. 7. Allowing a plaintiff in state court to commence an action by serving a summons and a complaint on a defendant instead of merely filing a complaint is not inconsistent with these goals. In fact, the need to notify defendants of their potential liability within six months appears better met by the Minnesota rule, as the federal rule does not require service until 120 days after the filing of the complaint, or ten months after accrual of the cause of action. *See* Fed.R. Civ.P. 4(j).

In *West v. Conrail*, the Supreme Court rejected the argument that a service period shorter than the 120–day period was necessary to assure prompt notice for defendants in hybrid suits. 481 U.S. at 40 n. 7, 107 S.Ct. at 1542 n. 7, 95 L.Ed.2d at 38 n. 7. In doing so, it demonstrated that the ultimate goal is uniformity in the act of commencing the hybrid action within six months, not uniformity in how that action is started. Use of the state procedural rule in this case does not, therefore, introduce undesirable non-uniformity in the enforcement of federal labor law. Without an unequivocal statement from the Supreme Court that the federal procedural rules preempt state rules in § 301/fair representation claims, regardless of where the suit is initiated, we find no compelling reason to deviate from the general rule.

Accordingly, we reverse the decision of the district court and remand for proceedings consistent with this opinion.

